*E-FILED - 5/12/08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THUAN LUONG, ) <br> ) <br>     Petitioner, ) <br> ) <br>   vs. ) <br> ) <br> TOM CAREY, Warden, ) <br> ) <br>     Respondent. ) <br> _____ ) | No. C 05-5257 RMW (PR) <br><br> ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner, a state prisoner proceeding <u>pro se</u>, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for battery on a peace officer (Cal. Pen. Code §§ 242, 243(c)(2)) and resisting a peace officer causing serious bodily injury (Cal. Pen. Code § 148.10(a)). This court found that the petition stated cognizable claims and ordered respondent to show cause as to why the petition should not be granted. Respondent filed an answer addressing the merits of the petition, and petitioner filed a traverse. After reviewing the papers and the underlying record, the court concludes that petitioner is not entitled to habeas relief and denies the petition.

///

///

///

# BACKGROUND[1]

On December 7, 2002, San Jose Police Officer Christopher Hardin was dispatched to investigate a complaint of loitering outside a home on Cramer Circle in San Jose. The dispatcher indicated that the loiterer was an Asian male in his mid-twenties wearing all black. As Officer Hardin approached the location in his patrol car, he observed two Asian males talking in the street. Officer Hardin stopped his vehicle and the men stopped talking and looked at him. One of the men, who Officer Hardin later identified as petitioner, walked in the street towards Officer Hardin's patrol car. After petitioner passed the passenger side of the patrol car, Office Hardin put his hand on petitioner's shoulder. Petitioner brushed away Officer Hardin's hand and the men began to struggle. After a short while, petitioner pushed himself away from the patrol car, kicked Officer Hardin in the knee, and fled. After additional officers arrived, they located Trung Nguyen and detained him. Officer Hardin described his assailant to the officers and later to a police sketch artist.

On February 11, 2003, several officers conducted a "sweep" of homeless people at Coyote Creek. Detective Tom Pham thought that petitioner matched the sketch of the person who assaulted Officer Hardin. Several officers walked petitioner to a nearby golf course patio where Detective Adam Hutson interviewed him. Petitioner acknowledged knowing Nguyen and, after walking back down to the creek area, he showed the officers shoes that matched those worn by the assailant. The officers arrested petitioner for a matter unrelated to the attack on Officer Hardin. Officer Hardin identified petitioner from a photographic lineup.

Before trial, petitioner moved to exclude all evidence of statements he made to the police before his arrest. The trial court denied the motion finding that the police interrogation was not custodial. The trial court also denied petitioner's motions to

---

[1] The relevant facts are taken from the unpublished opinion of the California Court of Appeal, Sixth Appellate District, People v. Luong, Case No. H026947 (May 24, 2005), Resp. Ex. F at 2-6.

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.rmw\hc.05\Luong257den          2

exclude evidence that petitioner and Nguyen knew each other because they frequently used drugs together, and that petitioner and Nguyen were members of an Asian gang.

After trial, a Santa Clara Superior Court jury convicted petitioner of the charged offenses. On direct appeal, the state appellate court affirmed the judgment on May 24, 2005. The state supreme court denied a petition for review on August 10, 2005. Petitioner filed the instant federal habeas petition on December 2, 2005 in the Eastern District of California. The petition was transferred to this court on December 19, 2005.

## DISCUSSION

**A.  Standard of Review**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, Williams (Terry) v. Taylor, 529 U.S. 362, 384-86 (2000), while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry), 529 U.S. at 412-13.

1 A state court decision is an "unreasonable application of" Supreme Court authority, 2 falling under the second clause of § 2254(d)(1), if the state court correctly identifies the 3 governing legal principle from the Supreme Court's decisions but "unreasonably applies 4 that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas 5 review may not issue the writ "simply because that court concludes in its independent 6 judgment that the relevant state-court decision applied clearly established federal law 7 erroneously or incorrectly." Id. at 411.

Where, as here, the highest state court to consider petitioner's claims issued a summary opinion which does not explain the rationale of its decision, federal review under § 2254(d) is of the last state court opinion to reach the merits. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of petitioner's claims is the unpublished opinion of the California Court of Appeal. See Resp. Ex. F.

**B. Exhaustion**

As an initial matter, respondent asserts that petitioner has not exhausted all of his claims in the state courts. Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The court may deny, but not grant, relief on a habeas petition that presents an unexhausted claim. See 28 U.S.C. § 2254(b)(1). However, the district court can deny an unexhausted claim "only when it is perfectly clear that the applicant does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 623 (9th Cir. 2005), cert. denied, 126 S.Ct. 1336 (2006). Here, the court concludes that petitioner's potentially unexhausted claim is without merit. Therefore, the court addresses the merits of this claim without deciding the exhaustion issue.

**C. Petitioner's Claims**

    **1. Evidentiary Claims**

Petitioner claims that the trial court erred when it allowed the prosecution to introduce evidence that a defense witness, Trung Nguyen, knew petitioner because they had used drugs together. Petition at 18. Petitioner also contends that the trial court erred when it allowed the prosecution to introduce evidence that Nguyen had been a member of an Asian gang. Id.

Because federal habeas relief does not lie for state law errors, a state court's evidentiary ruling is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. See Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000), cert. denied, 532 U.S. 984 (2001); Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999), cert. denied, 531 U.S. 995 (2000); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991) ("The issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point").

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. See Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir. 1986), cert. denied, 479 U.S. 839 (1986). Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. See Henry, 197 F.3d at 1031. "While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness." See Jammal, 926 F.2d at 919 (citing Perry v. Rushen, 713 F.2d 1447, 1453 (9th Cir. 1983), cert. denied, 469 U.S. 838 (1984)). The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so

1  prejudicial that it rendered the trial fundamentally unfair.  See Walters v. Maass, 45 F.3d
2  1355, 1357 (9th Cir. 1995); Colley, 784 F.2d at 990.  Only if there are no permissible
3  inferences that the jury may draw from the evidence may its admissions violate due
4  process.  See Jammal, 926 F.2d at 920.

### a. Evidence of Petitioner's and Nguyen's Drug Use

Petitioner asserts that the trial court erred in its admission of evidence that a defense witness, Trung Nguyen, used drugs with petitioner.  Petition at 18.  The prosecutor sought to introduce evidence of petitioner and Nguyen's drug use to establish that the two men knew each other.  Resp. Ex. F at 11.   Petitioner moved to exclude this evidence and claimed that the prosecution was able to let the jury know petitioner and Nguyen knew each other without introducing evidence of their drug use.  Id. at 11-12.  The trial court denied the motion.  Id. at 12.

The Court of Appeal concluded that the trial court's admission of the drug-use evidence was erroneous because "in order for evidence of an uncharged offense to be relevant for the purpose of establishing identity, it must share with the charged offense characteristics that are 'so unusual and distinctive as to be like a signature.'" Id. at 15 (citations omitted).  The appellate court found that there was nothing similar between the uncharged offenses of controlled substance abuse and the attack on Officer Hardin, but held that the trial court's admission of this evidence was harmless:

> The issue in this case was simple: was appellant the person that attacked Officer Hardin, or was Officer Hardin mistaken in his identification of appellant as his attacker?  Officer Hardin was trained in describing and recognizing suspects and was certain that appellant was his attacker.  Given that Nguyen's friendship with appellant undermined his believability, a jury would be cautious in giving credence to his testimony.  Thus, a jury would be left with Officer Hardin's testimony on the one hand and Fritz Lorenz's testimony on the other.  Given that Lorenz admitted he did not get close to the person loitering outside his house, we do not think that it is reasonably probable the jury would believe Lorenz and disbelieve Officer Hardin's testimony that he was certain that appellant was the person that attacked him. [¶] Accordingly, we conclude that it is not reasonably probable

> appellant would have received a more favorable outcome if the evidence had not been admitted.  (People v. Watson, supra, 46 Cal.2d at p. 836.)

Resp. Ex. F at 16-17 (footnote omitted).

Under AEDPA's highly deferential standard of review, the court concludes that admission of this evidence did not render the proceedings so fundamentally unfair as to violate petitioner's right to due process.  See Drayden, 232 F.3d at 710.  Here, the appellate court found that evidence of petitioner and Nguyen's drug use was erroneously admitted, however, any error was harmless because even if Nguyen's testimony was discredited by the jury, the main issue at trial was identity - whether petitioner was the individual who attacked Officer Hardin.  There were two witnesses that testified as to the identify of Officer Hardin's attacker.  First, Officer Hardin testified that he was certain that petitioner was the person who attacked him.  The second witness, Fritz Lorenz, told officers that Nguyen was not the person who had been loitering outside his home.  Resp. Ex. B (Reporter's Transcript "RT" Vol. 2) at 251.  However, Lorenz admitted that he was not close to the person he saw loitering.  Id. at 264.  The appellate court found that it was not reasonably probable that the jury would believe Lorenz and disbelieve Officer Hardin's testimony that Hardin was certain it was petitioner who attacked him.  Based upon its review of the underlying record, the court concludes that the trial court's admission of petitioner and Nguyen's drug use did not result in a fundamentally unfair trial in violation of due process.  Accordingly, the state court's determination was not contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

### b.  Evidence That Nguyen Had Been A Member Of A Gang

Petitioner maintains that the trial court erred in allowing the prosecution to admit evidence that Nguyen had been a member of a gang to show that Nguyen would be reluctant to testify against petitioner.  The Court of Appeal agreed with petitioner that the trial court erred in admitting evidence that Nguyen had been a member of a gang based on

1  the "well-settled rule that the use at trial of cumulative evidence of bias in the form of
2  gang-affiliation evidence constitutes an abuse of discretion." Resp. Ex. F at 19 (citations
3  omitted). However, the appellate court found that this error was harmless and did not
4  require reversal because it was not reasonably probable that petitioner would have
5  received a more favorable outcome if the evidence had not been admitted. Id. The
6  appellate court found this error was harmless for the same reasons it rejected petitioner's
7  claim regarding the admission of drug-use evidence, i.e., a reasonable jury would not
8  have believed witness Lorenz over Officer Hardin.

This court concludes that the admission of evidence that witness Nguyen belonged to a gang did not violate petitioner's right to due process as defined by clearly established federal law at the time of the state court's decision. See Drayden, 232 F.3d at 710. Nor has petitioner shown that the admission of this evidence had a substantial and injurious effect on the verdict. Evidence of Nguyen's membership in a gang had no bearing on the ultimate issue in this case, whether the jury should believe Officer Hardin or witness Lorenz. Officer Hardin testified that he was certain that petitioner was the man who attacked him, and witness Lorenz admitted that he did not get close to the individuals that he saw loitering outside of his house. The state appellate court reviewed petitioner's argument and concluded that it was not reasonably probable that petitioner would have received a more favorable outcome had the evidence not been admitted. Resp. Ex. F at 19. Because this determination was not unreasonable, petitioner fails to establish that admission of evidence that Nguyen had been a member of a gang was contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

**2. Admission of Petitioner's Statements to Detective Hutson**

Petitioner alleges that the trial court committed prejudicial error in failing to suppress his pre-arrest statements to Detective Hutson in violation of Miranda v. Arizona, 384 U.S. 436, 444 (1966). Petition at 18. "Miranda warnings are due only when a

suspect interrogated by the police is 'in custody.'" Thompson v. Keohane, 516 U.S. 99, 102 (1995). Petitioner contends that he was in custody when he made his statements to Detective Hutson.

    The trial court held a hearing on the admissibility of petitioner's statements to the police. See Resp. Ex F at 8. At the suppression hearing, San Jose Police Officer Tom Pham testified that he asked petitioner to move away from the creek bank because it was getting dark. Resp. Ex. B (RT Vol. 4) at 16. Officer Pham testified that petitioner was not told that he was under arrest and petitioner was not handcuffed. Id. at 19-20. Officer Pham never told petitioner that he was a suspect in an assault, rather Officer Pham asked petitioner to meet with an assault unit detective and petitioner agreed. Id. at 21, 24. Petitioner and the officers walked to the patio of Los Lagos Golf Course where they waited for the assault detective. Id. at 28.

    Detective Hutson testified that when he arrived at the patio, petitioner was sitting in a chair next to Officer Pham. Id. at 6-7. There were two other officers besides Officer Pham, and the officers were not surrounding petitioner. Detective Hutson testified that petitioner was not handcuffed and that Officer Pham did not have his gun drawn. Id. at 7, 12. Detective Hutson stated that petitioner was not placed under arrest and that petitioner was free to leave. Id. at 7, 9, 12. Detective Hutson questioned petitioner, then the officers escorted him back to the creek. Id. at 15. While at the creek, Detective Hutson determined that petitioner was under the influence of a controlled substance. Id. at 15-16. Officer Pham arrested petitioner and read him his Miranda rights. Id. at 9.

    The trial court denied petitioner's motion to suppress his statements, concluding that petitioner was not in custody when he made the statements. The trial court stated the following:

> I think it's clear from what I've heard so far that the sweep of the creek, the defendant's leading the way back to the patio, the fact that the conversation took place without the defendant being restrained physically in any way, the fact that no one displayed any type of weapons or excessive force or threats of force, no promises were made, other than, "There's this sketch, we'd like to talk to you about it." And I believe that's

> what occurred. [¶] [Defense counsel], I don't see here whether [sic] there was custodial interrogation. I just simply see there was investigation based upon the circumstances. And I don't think it was improper for the officers to ask the defendant to leave the creek where it's posted "No trespassing on this bridge." As he said, they sweep it once a month. Several people live there. [¶] The fact that it's getting dark, February, you expect that. And to ask the defendant to discuss something with him, he cooperated. He did. The officer said he was free to go if he didn't want to talk to him. And I assume that's the point that this is what they call investigation. The interview of a suspect, didn't have any – I don't see that it had any coercive aspects to it, and I rule that no Miranda warnings were required. And the request to if you will, suppress the statement is respectfully denied.

Resp. Ex. F at 8.

Applying the factors set forth in People v. Aguilera, 51 Cal.App.4th 1151 (1996), the state appellate court held as follows:

> [W]e agree with the trial court that there was no custodial interrogation. Although the police initiated contact with appellant, appellant agreed to talk with an assault unit detective. The express purpose of the interview was to question appellant as a suspect, but there is no indication that Detective Pham or Detective Hutson communicated this fact to appellant. In fact, Detective Pham testified that purposely he did not tell appellant he was a suspect. The interview took place in a public place; to which appellant lead Detective Pham. Although appellant was not told he was free to leave, he was not told that he was under arrest, and there is no indication in the record that appellant's freedom of movement was restricted in any way. Appellant waited for Detective Hutson for five to 10 minutes, but the interview lasted only 15 to 20 minutes. While there were five officers in and around the golf course patio, only two were close to appellant and involved in the questioning. . . .
> In sum, the record supports the trial court's implied finding that a reasonable person in appellant's position would not have felt that he was in custody and restrained from leaving the patio at any time that he so wished. Accordingly, we conclude that the interview was not custodial interrogation for which *Miranda* advisements were required.

Resp. Ex. F at 10-11.

Here, the state appellate court found that Miranda warnings were not necessary where petitioner voluntarily left the creek to the nearby golf course to discuss the police sketch with an assault detective. Petitioner maintains that he was in custody when Detective Hutson questioned him and therefore the trial court should not have admitted

his custodial statements. Petition at 35. However, for the reasons set forth below this court agrees with the state court's determination.

Miranda protections are triggered "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)). "[I]n custody" means "'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (quoting Oregon, 429 U.S. at 495). It requires that "a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave," as judged by the totality of the circumstances. Thompson, 516 U.S. at 112. The Ninth Circuit has identified several factors relevant to the "in custody" determination:

> Pertinent areas of inquiry include [1] the language used by the officer to summon the individual, [2] the extent to which he or she is confronted with evidence of guilt, [3] the physical surroundings of the interrogation, [4] the duration of the detention and [5] the degree of pressure applied to detain the individual. Based upon a review of all the pertinent facts, the court must determine whether a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave.

United States v. Booth, 669 F.2d 1231, 1235 (9th Cir. 1982); see e.g. United States v. Kim, 292 F.3d 969, 977-78 (9th Cir. 2002) (holding defendant was "in custody" where she arrived at her store to look for her son and did not know police were there, the store was surrounded, the police locked the door behind her and left her husband outside, they restricted her communication with her son, what language she should speak, when, and where she could sit, and the questioning was lengthy and detailed in nature). Even if a Miranda violation is found, habeas relief should be granted only where the admission of statements obtained in violation of Miranda "'had a substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The Supreme Court has made clear that neither Miranda nor its Supreme Court progeny set down any bright line rule or specific test for determining when someone is in

1  custody and instead suggested the totality of the circumstances of each case must be
2  examined to determine whether there was custody.  See Yarborough v. Alvarado, 541
3  U.S. 652, 661-62 (2004).  The generality of the Supreme Court's cases involving
4  custodial interrogation means that, for purposes of a federal habeas court deciding
5  whether the state court's decision was an unreasonable application of clearly established
6  federal law, the state court has more leeway in determining whether there was a custodial
7  interrogation.  See id. at 663-64.
8       Applying the relevant factors set forth in Booth, the court concludes that petitioner
9  was not in custody.  Although the officers asked petitioner to move away from the creek
10  bank because it was getting dark, petitioner agreed to talk with the assault unit detective
11  and voluntarily waited at the golf course patio for the detective to arrive.  The patio was a
12  public place rather than a police station or a location where the officers had exclusive
13  control.  Additionally, petitioner was never physically restrained or handcuffed and was
14  never told that he was under arrest.  There was no formal arrest or restraint on petitioner's
15  freedom of movement of the degree associated with a formal arrest.  Therefore, no
16  Miranda warnings were required.  Accordingly, the court concludes that the state court's
17  determination was not contrary to, or an unreasonable application of, clearly established
18  Supreme Court precedent, nor was it based on an unreasonable determination of the facts
19  in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

20      **3. Cumulative Effect of Alleged Errors**

21       Petitioner asserts that the cumulative effect of the trial court's errors violated his
22  due process right to a fair trial.  The Due Process Clause of the Fourteenth Amendment
23  encompasses the right to a fair trial.  In re Murchison, 349 U.S. 133, 136 (1955).
24  However, as the United States Supreme Court stated in Rose v. Clark:

25          The thrust of the many constitutional rules governing the
           conduct of criminal trials is to ensure that those trials lead to
26          fair and correct judgments.  Where a reviewing court can find
           that the record developed at trial establishes guilt beyond a
27          reasonable doubt, the interest in fairness has been satisfied
           and the judgment should be affirmed.  As we have repeatedly
28          stated, "the Constitution entitles a criminal defendant to a fair

trial, not a perfect one." <u>Rose v. Clark</u>, 478 U.S. 570, 579 (1986) (quoting <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 681 (1986)).  Cumulative error may be found when the cumulative effect of several errors so severely prejudices the defendant that the conviction must be overturned.  See <u>Alcala v. Woodford</u>, 334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution).  However, where no single constitutional error exists, nothing can accumulate to the level of a constitutional violation.  <u>Mancuso v. Olivarez</u>, 292 F.3d 939, 957 (9th Cir. 2002); <u>Rupe v. Wood</u>, 93 F.3d 1434, 1445 (9th Cir. 1996). Moreover, cumulative error is more likely to be found prejudicial when the government's case is weak.  <u>Walker v. Engle</u>, 703 F.2d 959, 961-62, 968 (6th Cir.), <u>cert. denied</u>, 464 U.S. 951 (1983).

The California Court of Appeal determined that "any evidentiary errors were harmless.  As we believe that none of the errors affected either defendant's due process and fair trial rights, whether viewed individually or collectively, there was no cumulative error."  Resp. Ex. F at 20.  This court agrees with the state court's determination.  As the evidentiary claims as discussed above do not entitle petitioner to relief, the court finds petitioner's cumulative error claim is without merit.  Petitioner fails to demonstrate that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law, nor that it was based upon an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

**D. Sentencing Claims**

Petitioner contends that under <u>Apprendi</u> and <u>Blakely</u>, the trial court's imposition of the upper term sentence of six years deprived him of his right to a jury trial.  In sentencing petitioner to the upper term, the trial court stated the following: "The Court selects the upper term of six years for these reasons.  That the defendant has engaged in this particular course of violent conduct, which indicates a serious danger to society.  He has served a prior prison term.  And his prior convictions as an adult are numerous and

increasing at this time." Resp. Ex. B, RT vol. 3, at 451.

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court explained that "the statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. at 303.

In Cunningham v. California, 127 S.Ct. 856 (2007), the Supreme Court, citing Apprendi and Blakely, held that California's Determinate Sentencing Law violates a defendant's right to a jury trial to the extent that it permits a trial court to impose an upper term based on facts found by the court rather than by a jury. Id. at 871 (finding the Court's decisions from Apprendi to Booker point to the middle term specified in California's statutes, not the upper term, as the relevant statutory maximum). At the time petitioner raised his claim in state court, Cunningham had not been decided. Therefore, petitioner cited Apprendi and Blakely in support of his claim.

Petitioner did not raise this claim in the trial court, however the appellate court did not recognize the forfeited error because California courts had expressly rejected the argument that there was any right to a jury trial on sentence aggravating factors and therefore any "objection would have been futile or wholly unsupported by substantive law then in existence." Resp. Ex. F at 22 (citing People v. Welch, 5 Cal.4th 228, 237-38 (1993)). The appellate court found that Blakely applied; however, because petitioner had admitted the prior felony conviction, one of the aggravating factors relied upon by the trial court in imposing the upper term sentence, the trial court could impose the upper term without a jury's finding on this factor. Id. at 23.

> Since in California the middle term is the maximum penalty that a court may impose without making additional findings of fact, *Blakely* applies. Accordingly, we must turn our attention to the question of whether any of the factors cited by the trial judge for imposing the upper term were "facts reflected in the jury verdict or admitted by the defendant." (*Blakely, supra*, 124 S.Ct. at p. 2537, italics omitted.) . . .

> [W]e must determine if any of the aggravating factors the trial court relied on in imposing the aggravated term can withstand scrutiny under *Blakely*. [¶] Based on the foregoing, we conclude that in a case where there are no mitigating factors, for *Blakely* purposes, the upper term is the relevant statutory maximum if the jury finds an aggravating factor, the defendant admits one, or the fact of a prior conviction permits an upper term sentence.

Resp. Ex. F at 25-26 (footnotes omitted). The state appellate court noted that petitioner "admitted at sentencing the existence of one aggravating factor, namely, that he had gone to prison for residential burglary (Cal. Rules of Court, rule 4.421(b)(3))." Resp. Ex. F at 27. The appellate court further observed:

> [T]he rule of *Apprendi* [*v. New Jersey*,] 530 U.S. 466 [(2000)] is that, 'other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' (*Id*. at p. 490.) In adding the alternative, facts 'admitted by the defendant,' *Blakely* cited page 488 in *Apprendi*. That passage in *Apprendi* described the earlier decision of *Almendarez-Torres* [*v. United States*,] 523 U.S. 224 [(2000)], which allowed a higher sentence to be imposed without jury findings based on a defendant's admissions of three prior convictions. Among the reasons given by *Apprendi* for allowing a sentence to be based on such facts were that the prior convictions 'had been entered pursuant to proceedings with substantial procedural safeguards of their own' and 'the reality that *Almendarez-Torres* did not challenge the accuracy of that "fact" in his case.' (*Apprendi, supra*, at p. 488.)

Resp. Ex. F at 27.

The court concludes that the state appellate court's decision was not an unreasonable application of federal law. In Cunningham, the Supreme Court held that by "assign[ing] to the trial judge, not to the jury, authority to find the facts that expose a defendant to an elevated 'upper term' sentence," California's determinate sentencing law "violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments." Cunningham, 127 S.Ct. at 860. However, in petitioner's case, the trial court cited the fact that petitioner had admitted a prior conviction as a basis for imposing the upper term. Therefore, the imposition of the upper term based on this fact did not violate the rule of Apprendi, Blakely, and Cunningham because that rule does not apply to

an aggravated sentence based on prior convictions which are admitted by petitioner. Apprendi, 530 U.S. at 490. Accordingly, the trial court's imposition of the upper term sentence was not contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

## CONCLUSION

The court concludes that petitioner has failed to show any violation of his federal constitutional rights in the underlying state criminal proceedings. Accordingly, the petition for writ of habeas corpus is DENIED. The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 5/9/08

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge